UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LAM VI QUAN, | Case No. 20-cv-08118-LB |
| Plaintiff, | |
| v. | **ORDER DENYING HABEAS PETITION** |
| WILLIAM P. BARR, et al., | Re: ECF No. 1 |
| Defendants. | |

## INTRODUCTION

The petitioner, a citizen of Vietnam and a lawful permanent resident of the United States, petitioned under 28 U.S.C. § 2241 for his release from immigration custody on the ground that (1) he did not receive an adequate bond hearing because in denying him bond, the immigration judge (IJ) did not consider the age of his conviction or his cognitive impairments, thus violating his due-process rights, and (2) as to the cognitive impairments, the IJ's denial violated the Rehabilitation Act, 29 U.S.C. § 794.[1] The court denies the petition because the IJ considered and weighed all evidence in reaching his decision.

---

[1] Pet. – ECF No. 1; Mem. – *id.* at 31–33 (¶¶ 1–8), 62 (¶ 98); Traverse – ECF No. 20 at 5. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-08118-LB

# STATEMENT

In 1982, at age seven, the petitioner came to the United States as a refugee from Vietnam as a lawful permanent resident.[2] At around age 10, he fell out of a tree and suffered severe brain damage that caused cognitive impairment and limited his ability to speak, read, write, and comprehend information.[3] As a result, he attended special-education classes and has the mental capabilities of a 12-year-old child.[4] He has never lived independently, and his parents cared for him as an adult.[5]

His criminal history includes two misdemeanors: driving with a suspended license in 1998 (probation) and petty theft in 1999 (probation).[6] It also includes two felonies: (1) in 2001, when he was 26, oral copulation and sexual penetration with an object with a minor under the age of 16 (a U.S. citizen — who became his wife in 2018, when he was in immigration custody — and with whom he has two U.S. citizen children) (resulting in a suspended sentence of 364 days and three years' probation); and (2) in 2011, aggravated assault of a police officer, in an incident where 10 to 15 men were drinking, police officers responded to a noise complaint, the petitioner threw six beer bottles at an officer's head (injuring him), others attacked the officer, and the officer suffered a head wound, a concussion, a partially torn rotator cuff, and abrasions (resulting in — after a jury trial and conviction — a sentence of eight years).[7]

The petitioner's criminal history has several arrests that did not result in convictions.[8]

After the petitioner's release from custody on January 12, 2018 for the assault on the police officer, the Department of Homeland Security (DHS) detained him and began removal proceedings because the crime was an aggravated felony.[9] 8 U.S.C. §§ 1101(a)(43)(F) &

---

[2] Mem., Ex. E to Cooper Decl. – ECF No. 1-1 at 59–60; Quan Decl., Ex. C to *id.* – ECF 1-1 at 14.
[3] Competency Evaluation, Ex. I to *id.* at 88.
[4] Neurocognitive Evaluation, Ex. D to *id.* at 37 (¶ 48).
[5] Competency Evaluation, Ex. I to *id.* at 88.
[6] CLETS Criminal History, Ex. Q to *id.* – ECF No. 1-2 at 110–13.
[7] *Id.* at 111–12.
[8] *Id.* at 109–13.
[9] *Id.* at 125; Notice to Appear, Ex. F to *id.* – ECF No. 1-1 at 54.

237(a)(2)(A)(iii). IJ Valerie Burch held a competency inquiry, ordered a forensic evaluation to assess competency, ultimately found that the petitioner was not competent to represent himself, and appointed a lawyer to represent him.[10] *Franco-Gonzalez v. Holder*, No. CV-10-0221 DMG (DTBx), 2014 WL 5475097, at *1, 7–9 (C.D. Cal. Oct. 29, 2014) (requiring these procedures for class members, who are detainees "who have serious mental disorders or defects that may render them incompetent to represent themselves in immigration proceedings, and who presently lack counsel in their immigration proceedings").

In August 16, 2018, the IJ held a bond hearing. *Franco-Gonzalez v. Holder,* No. CV 10-02211 DMG DTBX, 2013 WL 8115423, at *2 (C.D. Cal. Apr. 23, 2013) (requiring bond hearings — for subclass two members detained for 180 days — where the government must show by clear and convincing evidence that detention is justified). At the hearing, the petitioner denied throwing bottles at the officer's head.[11] The IJ denied bond in part because the petitioner denied responsibility, thus had not rehabilitated himself, and therefore posed a continuing danger for engaging in similar conduct.[12]

On February 25, 2019, the IJ granted the petitioner a waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act (INA), which requires a demonstration of "exceptional and extremely unusual hardship" and also found that the petitioner warranted a favorable exercise of discretion under INA § 245 for adjustment of status.[13] 8 U.S.C. §§ 1101(h) & 1255(a). She expressed concern about the convictions, particularly the 2011 conviction, and found that his testimony (about not committing the crime) was not credible.[14] She recognized that his mental condition played a role — but did not excuse — the crime.[15] She observed that he "acted childlike and impulsive" during the hearing and "he did not appear to comprehend the severity of his

---

[10] Derpo Decl., Ex. A to *id.* – ECF No. 1-1 at 2 (¶¶ 2–4).

[11] Tr., Ex. K to *id.* at 109–10.

[12] *Id.* at 127–28.

[13] Interim Removal Order, Ex. M to *id.* – ECF No. 1-1 at 199.

[14] *Id.* at 201, 203.

[15] *Id.* at 203.

ORDER – No. 20-cv-08118-LB    3

actions."[16] On April 23, 2020, IJ Joseph Park, incorporating Judge Burch's interim decision, granted the petitioner's application for a waiver of inadmissibility under INA § 212(h) and an adjustment of status under INA § 245.[17] On May 6, 2020, DHS appealed the decision to the Board of Immigration Appeals (BIA).[18] At the January 21, 2021 hearing in this case, the government said that it expected a decision soon and that if the BIA upheld the IJ's decision, the petitioner would be released.

In May 2020, the petitioner moved for, and IJ Andrew Caborn held, a second *Franco-Gonzalez* bond hearing.[19] The petitioner challenges the sufficiency of this hearing in this § 2241 petition.

In his May 2020 motion for the bond hearing, the petitioner contended that he was not a danger to the community because his last conviction was "nearly nine years ago," and he also contended (among other factors not relevant here) that Judge Park's decision adjusting his status was a material change justifying a custody redetermination.[20] DHS submitted the petitioner's criminal history and Judge Burch's interim decision, which (1) recounted the facts establishing the petitioner's neurocognitive issues impairments and incompetency and (2) credited the petitioner's testimony except for his testimony that he did not assault the police officer.[21]

At the May 8, 2020 bond hearing, DHS contended that the petitioner was as dangerous as he was in 2011, pointing to his overall criminal history and his lack of rehabilitation or remorse (shown by his denial of responsibility for the assault).[22] The petitioner responded that his failure to demonstrate remorse was a result of his neurological disorder and mental-health issues, as

---

[16] *Id.* at 204.

[17] *Id.*

[18] Derpo Decl., Ex. A to *id.* – ECF No. 1-1 at 4 (¶ 20).

[19] Mot., Ex. P to *id.* – ECF No. 1-2 at 2–100.

[20] *Id.* at 5–7. The other irrelevant factors were that the petitioner was not a flight risk, which is undisputed, and that the petitioner was particularly vulnerable to COVID-19, which is moot because the petitioner contracted COVID-19. *Id.* at 5–12; Pet. – ECF No. 1 at 18–19 (¶ 64); Tr., Ex. R to *id.* – ECF No. 1-2 at 153 (flight risk was not at issue at the hearing, only dangerousness).

[21] DHS Submission, Ex. Q to *id.* – ECF No. 1-2 at 101–47; *see id.* at 142–43 (IJ decision).

[22] Tr., Ex. R to *id.* at 154–55.

evidenced by his inclusion in the *Franco-Gonzalez* class.[23] At the end of the hearing, the IJ said that the case was very different than he expected when he walked into the courtroom, noted that he had only the temporary file (because the BIA had the full file), and contrasted the petitioner's several serious convictions to his being the beneficiary of the favorable exercise of discretion by two immigration judges. Given those circumstances, he said that he was not comfortable issuing a decision without further deliberation, planned to consider the issue for the rest of the day, and would issue the decision that day.[24]

The petitioner's counsel then expressed her concern that the IJ did not have the full file and offered to submit the relevant INA § 212(h) filings. The IJ asked for a copy of Judge Park's decision, and the petitioner's counsel responded that it was short and that Judge Burch's order was comprehensive and that "she does reference the record so." The IJ asked whether there was anything else that the petitioner wanted him to consider in the bond file, and she said that she would like to "incorporate [] the prior bond hearing" but knew that the IJ was "limited because you don't have the file," and she asked for the IJ to consider Judge Burch's decision.[25] The IJ reiterated that he could not make a bond decision on the spot, wanted to consider the additional facts that he learned about in court, needed more time, recognized the importance of the issue, and would make a decision by the end of the day. He asked whether "there was anything else from either party," and the petitioner's counsel asked whether the court would find it beneficial to hear from the petitioner's sister regarding her willingness to take responsibility for the petitioner. The IJ responded, "No."[26]

Later that day, the IJ issued a check-the-box order denying the bond.[27] On May 28, 2020, he issued a roughly three-page, single-spaced decision (including a page and a quarter on the relevant

---

[23] *Id.* at 155–56.

[24] *Id.*

[25] *Id.* at 156.

[26] *Id.* at 157–58.

[27] Bond Order, Ex. S to *id.* – ECF No. 1-2 at 160.

facts and equities), denying bond on the ground of danger to the community.[28] He summarized the relevant legal standard, including the government's burden to prove danger by clear and convincing evidence and an IJ's discretion.[29] He discussed the petitioner's criminal history (particularly the 2011 conviction), his neurocognitive impairments, and his strong ties to the community.[30] He then held that the positive equities — the mental-health issues, the strong community ties, and the proposed release plan (including living with his family and seeking employment) — did not mitigate dangerousness. He addressed the petitioner's contention that the 2011 conviction was stale, noting that he had been in custody since that time. He then said, "[t]he Court is cognizant of the [petitioner's] mental-health issues, but the Court simply cannot find that his continued detention and mental-health issues overcome the evidence of his potential dangerousness. Put simply, the extensiveness, nature, and recency of [his] criminal record prevents his release during the pendency of his proceedings."[31]

The petitioner appealed the denial of bond to the BIA, which reviewed the IJ's decision for clear error, affirmed the denial of bond on the ground that DHS established danger by clear and convincing evidence (based in part on the criminal history), and rejected the petitioner's contention that the IJ did not consider his brain injury and family ties.[32]

In May 2020, the petitioner filed a bail application in the class action *Zepeda Rivas v. Jennings*, seeking release due to the COVID-19 outbreak at his detention facility. No. 3:20-cv-02731-VC – ECF No. 267.[33] The court denied the request without prejudice. *Id.* – ECF No. 295.[34] On November 18, 2020, the petitioner filed this § 2241 petition challenging the IJ's and BIA's denial of bond.[35]

---

[28] Mem. Decision, Ex. T to *id*. at 163–65.

[29] *Id.* at 163.

[30] *Id.* at 164.

[31] *Id.* at 164–65.

[32] BIA Decision, Ex. X to *id.* – ECF No. 1-2 at 180–81.

[33] Application, Ex. V to *id.* – ECF No. 1-2 at 171–75.

[34] Order No. 23, Ex. W to *id.* at 177.

[35] Pet. – ECF No. 1.

The court held a hearing on January 21, 2020. All parties consented to magistrate-judge jurisdiction.[36]

## ANALYSIS

The petitioner contends that his due-process rights were violated because DHS did not show danger to the community by clear and convincing evidence, and IJ Caborn and the BIA committed legal error by not considering adequately (1) the remoteness of his 2011 assault conviction, (2) his cognitive impairment, and (3) IJ Burch's decision granting him a waiver from inadmissibility under INA § 212(h).[37] He also contends that the IJ's failure to consider his cognitive impairment violated the Rehabilitation Act, 29 U.S.C. § 794.[38] Because the IJ considered and weighed this evidence in reaching his decision, there is no due-process violation or violation of the Rehabilitation Act.

**1. Due Process**

"At a bond hearing, to justify denial of bond and continued detention, due process requires the Government to prove by clear and convincing evidence that an immigrant is a flight risk or a danger to the community." *Perez v. Wolf*, 445 F. Supp. 3d 275, 286 (N.D. Cal 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). Factors relevant to that inquiry may include any or all of the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

---

[36] Consents – ECF Nos. 5, 10, 18.

[37] Pet. – ECF No. 1 at 23–24 (¶¶ 80–86).

[38] *Id.* at 24–25 (¶¶ 87–89).

*Singh*, 638 F.3d at 1206 n.5 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ has broad discretion in deciding the facts that he considers in custody redeterminations and may choose to give greater weight to one factor over another, as long as the decision is reasonable. *Id.*; *Guerra*, 24 I & N Dec. at 40.

In reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision "reflects clear legal error or is unsupported by sufficient evidence." *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (citation and quotation omitted); *Calmo v. Sessions*, No. C 17-07124-WHA, 2018 WL 2938628, at * 4 (N.D. Cal. June 12, 2018). "The *Guerra* factor most pertinent to assessing dangerousness directs immigration judges to consider the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206. That said, "[a]lthough an alien's criminal record is surely relevant to a bond assessment . . . criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." *Id*. It is "not constitutional error for an IJ to base [a] decision on the petitioner's criminal record, so long as the IJ analyzes the recency of the crimes and what (if any) actions the petitioner has taken to rehabilitate" himself. *Perez*, 445 F. Supp. 3d at 287.

Here, the IJ considered all the evidence — the criminal history, its recency, the petitioner's continued detention since 2011, the IJ's decision granting a waiver under INA § 212(h) (which addressed the petitioner's denial of wrongdoing for the 2011 assault and his neurocognitive impairments), and the mitigating factors (the neurocognitive impairments, the family ties, and the proposed release plan) — in reaching his determination that DHS established dangerousness by clear and convincing evidence. In particular, the IJ rejected the petitioner's argument that the conviction was remote on the ground that the petitioner was in continuous custody and denied his responsibility for the crime. The IJ recognized the petitioner's mental impairment but found that it — and the other equities supporting release — did not outweigh the evidence of danger to the community. This satisfies due process. *Perez*, 445 F. Supp. 3d at 287.

The petitioner nonetheless contends that the IJ did not consider the age of his 2011 conviction. The record and his authorities do not compel that conclusion. Two of the cases involve petitioners with DUIs and significant rehabilitation. *See Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1036–37 (W.D. Wash. 2019) (DUI no-jail time cases — including two misdemeanors and one felony DUI/vehicular assault — with four years since the last conviction, alcohol treatment, and seven years of sobriety; a no-driving condition could address danger); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 774–75 (N.D. Cal. 2019) (commitment to sobriety and treatment through an inpatient program, an updated psychiatric evaluation, and increasing remoteness). The third involved a decades-old conviction for the violent crime of involuntary manslaughter, with no evidence that similar conduct — given the petitioner's demeanor, temperament, or associations — was likely to recur. *Judulang v. Chertoff*, 562 F. Supp. 2d, 1119, 1126–27 (C.D. Cal. 2008).

No evidence about rehabilitation or conditions to address danger exists here. For example, the release plan had no provision for mental-health treatment or interventions to address what led to the violent conduct in 2011.[39] The age of the 2011 assault conviction was counterbalanced by the petitioner's denial of involvement (despite witness testimony to the contrary). The IJ thus concluded that the age of the conviction did not change the conclusion of present danger. *Cf. Perez*, 445 F. Supp. 3d at 288 (incarceration since the crime is relevant to the determination of dangerousness). It was not constitutional error for the IJ to deny bond: the court does not second guess the IJ's weighing of evidence, and the IJ's decision was not "clear legal error" or "unsupported by sufficient evidence." *Hilario Pankim*, 2020 WL 2542022, at *8 (cleaned up).

## 2. Rehabilitation Act Claim

The petitioner also challenges the IJ's alleged failure to consider his cognitive impairment (as it related to his testimony) on the ground that it violates § 504 of the Rehabilitation Act, 29 U.S.C. § 794. The petitioner has not established a § 504 claim, in part because he had appointed counsel, and the IJ in any event considered his impairments.

---

[39] Mot., Ex. P to Cooper Decl. – ECF No. 1-2 at 18 (Post-Release Plan).

ORDER – No. 20-cv-08118-LB                 9

Under § 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency. . . ." 29 U.S.C. § 794(a). The elements of a § 504 claim are as follows: the petitioner must show that "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *L.H. v. Mill Valley Sch. Dist.*, No. 15-CV-05751-HSG, 2016 WL 3162174, at *3 (N.D. Cal. June 7, 2016) (cleaned up). "An organization that receives federal funds violates Section 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services." *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1051 (C.D. Cal. 2010) (citing 28 C.F.R. § 35.130(b)(7)).

The government contends that at minimum, the petitioner did not establish the third element of a § 504 claim: he was denied the benefits of the program solely by reason of his disability.[40] The petitioner did not establish this element because he had an appointed attorney. *Id.* at 1056–58. The petitioner cites no authorities requiring any additional accommodations. Moreover, the IJ considered the petitioner's mental impairments in his weighing of dangerousness. There is no violation of the Rehabilitation Act.

## CONCLUSION

The court denies the § 2241 petition: (1) on this record, there is no due-process violation, and (2) the IJ's appointment of an attorney and consideration of the petitioner's mental impairments foreclose any claim of a violation of the Rehabilitation Act. This disposes of ECF No. 1.

**IT IS SO ORDERED.**

Dated: January 29, 2021

_____
LAUREL BEELER
United States Magistrate Judge

---

[40] Response – ECF No. 19 at 27.